B1 (Official Form 1) (04/13)

| **United States Bankruptcy Court**<br>**District of Delaware** | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Algoma Holdings B.V.** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**N/A** |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**N/A** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): **N/A** |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>**34241679 (Netherlands Chamber of Commerce Number)** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): **N/A** |
| Street Address of Debtor (No. and  Street, City, and State):<br>**Prins Bernhardplein 200 1097 JB Amsterdam The Netherlands** | Street Address of Joint Debtor (No. and Street, City, and State): **N/A** |

| | ZIP CODE  N/A | | ZIP CODE  N/A |
|---|---|---|---|

| County of Residence or of the Principal Place of Business:  **Amsterdam, North Holland, The Netherlands** | County of Residence or of the Principal Place of Business: **N/A** |
|---|---|
| Mailing Address of Debtor (if different from street address):<br>**105 West Street**<br>**Sault Ste. Marie, Ontario**<br>**Canada P6A 7B4** | Mailing Address of Joint Debtor (if different from street address): **N/A** |

| | ZIP CODE P6A 7B4 | | ZIP CODE N/A |
|---|---|---|---|

| Location of  Principal Assets of Business Debtor (if different from street address above): | | ZIP CODE N/A |
|---|---|---|

| **Type of Debtor**<br>(Form of Organization)<br>(Check **one** box.) | **Nature of Business**<br>(Check one box.) | **Chapter of Bankruptcy Code Under Which**<br>**the Petition is Filed** (Check one box) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☒ Other (If debtor is not one of the above entities, check this box and state type of entity below.)<br>**Dutch B.V. (Private Limited Liability Company)** | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>  11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other **Holding Company** | ☐ Chapter 7<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13 ☒ Chapter 15 Petition for Recognition of a<br>  Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a<br>  Foreign Nonmain Proceeding |

| **Chapter 15 Debtors** | **Tax-Exempt Entity**<br>(Check box, if applicable) | **Nature of Debts**<br>(Check **one** box.) |
|---|---|---|
| Country of debtor's center of main interests: **Canada**<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: **Canada** | ☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a  personal, family, or household purpose."    ☒ Debts are primarily business debts. |

| **Filing Fee** (Check one box) | **Chapter 11 Debtors** |
|---|---|
| ☒ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only).  Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments.  Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only).  Must attach signed application for the court's consideration.  See Official Form 3B. | **Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*<br>- - - - - - - - - - - - - - - - - - - - - - - - - - -<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| **Statistical/Administrative Information** | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors (on a consolidated basis with the entities listed on Schedule 1 hereto)

| 1-49 | 50-99 | 100-199 | 200-999 | 1000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

Estimated Assets (on a consolidated basis with the entities listed on Schedule 1 hereto)

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

Estimated Liabilities (on a consolidated basis with the entities listed on Schedule 1 hereto)

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

B1 (Official Form 1) (04/13)                                                                         Page 2

| **Voluntary Petition** <br> *(This page must be completed and filed in every case)* | Name of Debtor(s): <br> **Algoma Holdings B.V.** |
|---|---|

| **All Prior Bankruptcy Case Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location <br> Where Filed:    **District of Delaware** | Case Number: <br> **14-11733-BLS** | Date Filed: <br> **07/16/2014** |
| Location <br> Where Filed:    **N/A** | Case Number: <br> **N/A** | Date Filed: <br> **N/A** |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtors: <br>    **See Attached Schedule 1** | Case Numbers: <br>    **See Attached Schedule 1** | Date Filed: <br> **November 9, 2015** |
| District: <br>    **District of Delaware** | Relationship: <br>    **Affiliates** | Judge: **The Honorable Brendan Linehan Shannon** |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11). <br><br> **NOT APPLICABLE** <br><br><br> ☐   Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual <br> whose debts are primarily consumer debts) <br> **NOT APPLICABLE** <br> I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. § 342(b). <br><br> X _____ <br>    Signature of Attorney for Debtor(s)          (Date) |

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety? <br><br> ☐   Yes, and Exhibit C is attached and made a part of this petition. <br> ☒   No. |

| **Exhibit D – NOT APPLICABLE** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.) <br><br> ☐   Exhibit D, completed and signed by the debtor, is attached and made a part of this petition. <br><br> If this is a joint petition: <br><br> ☐   Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition. |

| **Information Regarding the Debtor Venue** <br> (Check any applicable box.) |
|---|
| ☐   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. <br><br> ☒   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District. <br><br> ☒   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property – NOT APPLICABLE** <br> (Check all applicable boxes.) |
|---|
| ☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.) <br><br>         _____ <br>         (Name of landlord than obtained judgment) <br><br><br>         _____ <br>         (Address of landlord) <br><br> ☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and <br><br> ☐   Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition. <br><br> ☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(1)). |

B1 (Official Form) 1 (04/13)                                                                                                                      Page 3

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s): Algoma Holdings B.V. |
|---|---|

## Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X_____
   Signature of Debtor

X_____
   Signature of Joint Debtor

_____
   Telephone Number (If not represented by attorney)

_____
   Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only **one** box.)

☒   I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐   Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X   */s/ J. Robert Sandoval*
   (Signature of Foreign Representative)

   **J. Robert Sandoval, General Counsel**
   (Printed Name of Foreign Representative)

   **November 20, 2015**
   Date

**Signature of Attorney***

X   *Dat DeF.*
   Signature of Attorneys for Debtor(s)

   **Daniel J. DeFranceschi**                          **Ray C. Schrock, P.C.**
   Printed Name of Attorneys for Debtor(s)

   **Richards, Layton & Finger, P.A.**              **Weil, Gotshal & Manges LLP**
   Firm Names

   **One Rodney Square, 920 North King Street,**    **767 Fifth Avenue**
   **Wilmington, DE 19801**                          **New York, NY 10153**
   Addresses

   **(302) 651-7700**                                **(212) 310-8000**
   Telephone Numbers

   **November 20, 2015**
   Date

   * In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

X_____

_____
   Signature

_____
   Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X_____
   Signature of Authorized Individual

_____
   Printed Name of Authorized Individual

_____
   Title of Authorized Individual

_____
   Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

3

## Schedule 1

Pending Bankruptcy Cases Filed by
Affiliates of the Debtor in a Foreign Proceeding

On November 9, 2015, each of the entities listed below filed a voluntary petition for

relief under chapter 15 of title 11 of the United States Code in the United States Bankruptcy

Court for the District of Delaware (the "**Court**").  On November 10, 2015, the Court entered an

*Order Directing Joint Administration of Chapter 15 Cases Pursuant to Bankruptcy Rule 1015(b)*

(*see In re Essar Steel Algoma Inc*. No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2015) [D.I.

32]), to consolidate the following chapter 15 cases for procedural purposes only:

| DEBTOR | CASE NUMBER | DATE FILED | DISTRICT | JUDGE |
|---|---|---|---|---|
| Essar Steel Algoma Inc. USA | 15-12270 (BLS) | November 9, 2015 | Delaware | Judge Brendan Linehan Shannon |
| Essar Steel Algoma Inc. | 15-12271 (BLS) | November 9, 2015 | Delaware | Judge Brendan Linehan Shannon |
| Cannelton Iron Ore Company | 15-12272 (BLS) | November 9, 2015 | Delaware | Judge Brendan Linehan Shannon |
| Essar Steel Algoma (Alberta) ULC | 15-12273 (BLS) | November 9, 2015 | Delaware | Judge Brendan Linehan Shannon |
| Essar Tech Algoma Inc. | 15-12274 (BLS) | November 9, 2015 | Delaware | Judge Brendan Linehan Shannon |

## **Schedule 2**

**Amended and Restated CCAA Initial Order**

Court File No.  CV-15-000011169-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| THE HONOURABLE MR. | ) | MONDAY, THE 9TH |
|---|---|---|
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF NOVEMBER, 2015 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
ESSAR STEEL ALGOMA INC., ESSAR TECH ALGOMA INC., ALGOMA HOLDINGS B.V.,
ESSAR STEEL ALGOMA (ALBERTA) ULC, CANNELTON IRON ORE COMPANY AND
ESSAR STEEL ALGOMA INC. USA

**Applicants**

**AMENDED AND RESTATED INITIAL ORDER**

**THIS APPLICATION**, made by Essar Steel Algoma Inc. ("**ESAI**"), Essar Tech Algoma Inc., Algoma Holdings B.V., Essar Steel Algoma (Alberta) ULC, Cannelton Iron Ore Company and Essar Steel Algoma Inc. USA (together, the "**Applicants**" or "**Algoma**"), pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavits of Rajat Marwah sworn November 9, 2015 (the "**Marwah Affidavit**"), the affidavit of Rajat Marwah sworn November 12, 2015, and the affidavit of Rajat Marwah sworn November 13, 2015 and the Exhibits to each of them, and the Pre-filing Report of Ernst & Young Inc. ("**EY**"), as proposed monitor, and the First Report of EY, as Monitor (the "**Monitor**"), and on being advised that those parties listed in the affidavits of service filed, were given notice of this application, and on hearing the submissions of counsel for the Applicants, EY and the DIP Agent (as defined below) and the other parties appearing and on reading the consent of EY to act as Monitor.

- 2 -

## SERVICE

1.      **THIS COURT ORDERS** that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

## APPLICATION

2.      **THIS COURT ORDERS AND DECLARES** that the Applicants are companies to which the CCAA applies.

## PLAN OF ARRANGEMENT

3.      **THIS COURT ORDERS** that any one or more of the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

## POSSESSION OF PROPERTY AND OPERATIONS

4.      **THIS COURT ORDERS** that the Applicants shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof (the "**Property**").  For greater certainty, "Property" includes all raw materials, inventory and other assets of the Applicants currently, or in the future, located at the cargo port facility (the "**Port**") leased by Algoma to Port of Algoma Inc. ("**PortCo**") pursuant to the Port Lease between ESAI (as landlord) and PortCo (as tenant) dated November 14, 2014, as amended, restated, supplemented and/or modified from time to time, and the Applicants shall be entitled to continued unimpeded access to all Property located at the Port and use of all equipment used in connection with the operation of the Port.  Subject to further Order of this Court, the Applicants shall continue to carry on business in a manner consistent with the preservation of their business (the "**Business**") and the Property.

5.      **THIS COURT ORDERS** that the Applicants are authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants,

- 5 -

counsel and such other persons (collectively, the "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

6.     **THIS COURT ORDERS** that the Applicants shall be entitled to continue to utilize the central cash management system currently in place, as described in the Marwah Affidavit, or, subject to the terms of the DIP Agreement (as defined below) and the Definitive Documents (as defined below), replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

7.     **THIS COURT ORDERS** that the Applicants shall have full and complete access to any books, documents, securities, contracts, orders, corporate and accounting records, and any other papers, records and information of any kind related to the business or affairs of the Applicants, and any computer programs, computer tapes, computer disks, or other data storage media containing any such information (the foregoing, collectively, the "**Records**") and any person in possession or control thereof shall grant to the Applicants unfettered access to such Records or permit the Applicants to make, retain and take away copies of such Records, including granting to the Applicants unfettered access to and use of accounting, computer, software and physical facilities relating thereto; provided however that nothing in paragraphs 7 or 8 of this Order shall require the delivery of Records, or the granting of access to Records, which may not be disclosed or provided to

-4-

the Applicants due to the privilege attaching to solicitor-client communication or due to statutory provisions prohibiting such disclosure.

8.     **THIS COURT ORDERS** that if any Records are stored or otherwise contained on a computer or other electronic system of information storage, whether by independent service provider or otherwise, all persons in possession or control of such Records shall forthwith give unfettered access to the Applicants for the purpose of allowing the Applicants to recover and fully copy all of the information contained therein whether by way of printing the information onto paper or making copies of computer disks or such other manner of retrieving and copying the information as the Applicants in their discretion deem expedient, and shall not alter, erase or destroy any Records without the prior written consent of the Applicants.  Further, for the purposes of this paragraph, all persons shall provide the Applicants with all such assistance in gaining immediate access to the information in the Records as the Applicants may in their discretion require, including, providing the Applicants with instructions on the use of any computer or other system and providing the Applicants with any and all access codes, account names and account numbers that may be required to gain access to the information.

9.     **THIS COURT ORDERS** that, in accordance with the DIP Agreement, the Definitive Documents and the Approved Budget (as defined in the DIP Agreement), the Applicants shall be entitled but not required to pay the following expenses whether incurred prior to or after this Order:

(a)     all outstanding and future wages, salaries, bonuses, employee and pension benefits (where those pension benefits are payable directly by ESAI), including, without limitation, employee and retiree medical, dental and similar benefit plans or arrangements, employee assistance programs, and other retirement benefits and related contributions, vacation pay and expenses payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)    with the consent of the Monitor, all outstanding or future amounts owing in respect of customer rebates, refunds, discounts or other amounts on account of similar customer programs or obligations; and

(c)    the fees and disbursements of any Assistants retained or employed by the Applicants in respect of these proceedings, at their standard rates and charges.

10.    **THIS COURT ORDERS** that, in accordance with the DIP Agreement, the Definitive Documents and the Approved Budget, and except as otherwise provided to the contrary herein, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course prior to, on or after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)    all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance and security services; and

(b)    payment for goods or services actually supplied to the Applicants following the date of this Order,

provided that, to the extent such expenses were incurred prior to the date of this Order, the Applicants shall only be entitled to pay such amounts if they are determined by the Applicants, in consultation with the Monitor, to be necessary to the continued operation of the Business or preservation of the Property and such payments are approved in advance by the Monitor or by further Order of the Court. For greater certainty, the Applicants shall continue to pay the normal prices or charges payable to Portco that accrue and become payable from and after the date of this Order in accordance with the relevant agreements in effect between Portco and the Applicants or such other practices as may be agreed upon by Portco and each of the Applicants and the Monitor, in accordance with the Approved Budget, or as may be ordered by this Court.

11.     **THIS COURT ORDERS** that the Applicants shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (a) employment insurance, (b) Canada Pension Plan, and (c) income taxes;

(b)     all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order; and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Applicants.

12.     **THIS COURT ORDERS** that until a real property lease is disclaimed in accordance with the CCAA, the Applicants shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated between the Applicants and the landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

13.     **THIS COURT ORDERS** that, except as specifically permitted herein and in accordance with the DIP Agreement, the Definitive Documents and the Approved Budget, the Applicants are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Applicants to any of their creditors as of this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of its Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business.

**RESTRUCTURING**

14.     **THIS COURT ORDERS** that the Applicants shall, subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the DIP Agreement and the Definitive Documents, have the right to:

(a)     permanently or temporarily cease, downsize or shut down any of their business or operations;

(b)     dispose of redundant or non-material assets not exceeding $5 million in any one transaction or $10 million in the aggregate with the consent of the Monitor or further Order of the Court;

(c)     terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate in accordance with their legal obligations, including any legal obligations arising pursuant to collective agreements; and

(d)     pursue all avenues of refinancing of their Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "**Restructuring**").

15.     **THIS COURT ORDERS** that the Applicants shall provide each of the relevant landlords with notice of the Applicants' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Applicants' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Applicants, or by further Order of this Court upon application by the Applicants on at least two (2) days' notice to such landlord and any such secured creditors. If the Applicants disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Applicants' claim to the fixtures in dispute.

16.     **THIS COURT ORDERS** that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

## NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY

17.     **THIS COURT ORDERS** that until and including January 15, 2016, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and

any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

**NO EXERCISE OF RIGHTS OR REMEDIES**

18.    **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended, including the right of any Person who has entered into a consignment arrangement with the Applicants to repossess or remove any property delivered to the Applicants or located on the property owned by the Applicant, except with the written consent of the Applicants and the Monitor or leave of this Court, provided that nothing in this Order shall (a) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (b) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (c) prevent the filing of any registration to preserve or perfect a security interest, or (d) prevent the registration of a claim for lien.

19.    **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any Person, against or in respect of PortCo and Essar Power Canada Ltd. ("EPC"), or affecting the business, assets, undertakings or properties of PortCo or EPC that could alter, interfere with or otherwise impede the Business or Property are hereby stayed and suspended except with the written consent of the Monitor or leave of this Court, provided that ESAI continues to perform its contractual obligations to PortCo and EPC.

**NO INTERFERENCE WITH RIGHTS**

20.    **THIS COURT ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

**TOLLING OF LIMITATION PERIODS**

21.    **THIS COURT ORDERS** that Tolled Claims shall mean any and all actions, suits, claims, causes of action, demands, or grievances, whether in Canada or elsewhere, whether known or unknown, which a party may bring against the Applicants.

22.    **THIS COURT ORDERS** that to the extent that any statute of limitations or other notice or limitation period (or any other time period of similar effect), whether statutory, equitable, contractual or otherwise, under Canadian law, U.S. law, or any other applicable law, (a "**Limitation Period**") in connection with a Tolled Claim expires on or after November 9, 2015 (the "**Effective Date**"), such Limitation Period shall be and is hereby tolled such that it ceases to continue running as of the Effective Date and, for greater certainty, that all time elapsing on or after the Effective Date shall not be counted in determining any such Limitation Period.

23.    **THIS COURT ORDERS** that none of the Applicants, nor any of their Directors and/or Officers, may raise the expiration of any Limitation Period as a defence, estoppel, limitation, or bar to any Tolled Claim unless such Limitation Period had already expired prior to the Effective Date.

24.    **THIS COURT ORDERS** that it is expressly acknowledged that this Order is without prejudice to the Applicants' rights and remedies with respect to any Tolled Claims (including the Applicants' rights to compromise such Tolled Claims within these CCAA proceedings) and does not preclude any challenge that the Applicants may wish to make to any Tolled Claims that are made in any proceeding (including these CCAA proceedings), or any defence that the Applicants may wish to raise (including on the basis of any Limitation Period that expired before the Effective Date).

25.    **THIS COURT ORDERS** that in the event that an order is subsequently made setting aside, or materially amending or varying paragraphs 21 to 24 of this Order, or exempting a Tolled Claim from the operation of those paragraphs (collectively, a "**Change Order**"), the Change Order shall not have effect for a period of 30 days from the date of the Change Order or such other period as the Court may order.

**CONTINUATION OF SERVICES**

26.     **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with the Applicants or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility, electricity, steam, raw materials, equipment, customs clearing, logistics, port services, cargo handling services, warehouse services, outside processors, or other services to the Business or the Applicants (including for greater certainty PortCo and EPC), are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

27.     **THIS COURT ORDERS** that, notwithstanding anything else in this Order, but subject to paragraphs 28 to 30 below, no Person shall be prohibited from requiring immediate payment for goods, services, use of lease or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**CRITICAL SUPPLIERS**

28.    **THIS COURT ORDERS AND DECLARES** that each of the entities listed in Schedule "B" hereto is a critical supplier of the Applicants as contemplated by Section 11.4 of the CCAA (each, a "**Critical Supplier**").

29.    **THIS COURT ORDERS** that each Critical Supplier shall continue to supply the Applicants with goods and/or services in accordance with the terms and conditions of their existing agreement or arrangements, as set out in Schedule "B" hereto. No Critical Supplier may require the payment of a further deposit or the posting of any additional security in connection with the supply of goods and/or services to the Applicants after the date of this Order.

30.    **THIS COURT ORDERS** that each Critical Supplier shall be entitled to the benefit of and is hereby granted a charge (together, the "**Critical Supplier Charge**") on the Property in an amount equal to the value of the goods and services supplied by such Critical Supplier and received by the Applicants after the date of this Order less all amounts paid to such Critical Supplier in respect of such goods and services; provided that such charge shall not exceed an aggregate amount of $15 million. The value of the goods and services supplied shall be determined in accordance with the terms of the existing agreement or arrangements between the Applicants and the Critical Supplier or, in the event of any dispute, by the Court. The Critical Supplier Charge shall have the priority set out in paragraphs 60 and 62 hereof.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

31.    **THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicants, if one is

filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

## DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE

32.    **THIS COURT ORDERS** that the Applicants shall indemnify their directors and officers against obligations and liabilities that they may incur as directors and officers of the Applicants after the commencement of the within proceedings, except to the extent that, with respect to any director or officer the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

33.    **THIS COURT ORDERS** that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "D&O Charge") on the Property, which charge shall not exceed an aggregate amount of $30 million, as security for the indemnity provided to their directors and officers in paragraph 32 of this Order. The D&O Charge shall have the priority set out in paragraphs 60 and 62 hereof.

34.    **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the D&O Charge, and (b) the Applicants' directors and officers shall only be entitled to the benefit of the D&O Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 32 of this Order.

## ENGAGEMENT OF FINANCIAL ADVISOR

35.    **THIS COURT ORDERS** that the agreement dated as of October 14, 2015, engaging Evercore Group L.L.C. (the "**Financial Advisor**") as financial advisor to the Applicants, a copy of which is attached as Exhibit "E" to the Marwah Affidavit (the "**Evercore Engagement Letter**"), and the retention of the Financial Advisor under the terms thereof are hereby approved, including, without limitation, the payment of the Monthly Fee and reasonable expenses, the Success Fee and the Financing Fee (as those terms are defined in the Evercore Engagement Letter). The Financial Advisor shall be

entitled to the benefit of and is hereby granted a charge (the "**Financial Advisor's Charge**") on the Property, which charge shall not exceed that amount of Canadian Dollars necessary to purchase US$8 million on the date that the Financial Advisor's Charge is enforced, as security for the Success Fee. The Financial Advisor's Charge shall have the priority set out in paragraphs 60 and 62 hereof. The Monthly Fee and reasonable expenses shall be entitled to the benefit of the Administration Charge (as defined below).

**APPOINTMENT OF MONITOR**

36.     **THIS COURT ORDERS** that Ernst & Young Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicants with the powers and obligations set out in the CCAA or set forth herein and that the Applicants and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

37.     **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)     monitor the Applicants' receipts and disbursements;

(b)     review and report to this Court with respect to any material operational, supply or sale agreements entered into or amended by the Applicants following the date of the this Order;

(c)     review and report to this Court with respect to material transactions and other arrangements between the Applicants and any related party of the Applicants, including, without limitation, the creation of any new agreement or the modification or performance of an existing agreement between the Applicants and a related party of the Applicants (including, without limitation, the Port Agreements and the Cogen Agreements (as such terms are defined in the DIP Agreement));

(d)     review and report to the Court with respect to all protocols and procedures regarding intercompany claims and cash transfers;

(e)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, actions taken by the Applicants to develop and advance potential restructuring alternatives, including any or all of a Plan, a plan of reorganization, a refinancing or a sale transaction (collectively, "**Restructuring Transactions**"), and such other matters as may be relevant to the proceedings herein;

(f)     review and report to this Court on an ongoing basis with respect to the actions taken and protections implemented by the Applicants to protect the confidential information of the Applicants, including, without limitation, such protections as the Monitor may deem necessary or appropriate for the protection of confidential information relating to these proceedings and any potential Restructuring Transactions under development or consideration by the Applicants;

(g)     assist the Applicants, to the extent required by the Applicants, in their dissemination to the DIP Agent and the DIP Lenders and their respective counsel and financial advisors of financial and other information as contemplated to be provided to the DIP Agent and the DIP Lenders pursuant to the DIP Agreement and the Definitive Documents, and the Court orders that such information may be used in these proceedings;

(h)     advise the Applicants in their preparation of the Applicants' cash flow statements and reporting required by the DIP Agreement and the Definitive Documents, which information shall be reviewed with the Monitor and delivered to the DIP Agent and the DIP Lenders and their respective counsel and financial advisors in accordance with the DIP Agreement and the Definitive Documents;

6483607 v4

(i)     advise and assist the Applicants in the exploration, development, negotiation and assessment of any Restructuring Transactions, including without limitation with respect to their development of the Plan and any amendments to the Plan;

(j)     assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(k)     review the professional fees and disbursements paid by the Applicants pursuant to paragraph 42 of this Order and report to the Court with respect to such fees and disbursements as appropriate;

(l)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicants, to the extent that is necessary to adequately assess the Applicants' business and financial affairs or to perform its duties arising under this Order, and any Person in possession or control of any Records is hereby ordered to grant the Monitor access to such Records on the terms set forth in paragraphs 7 and 8 of this Order;

(m)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(n)     perform such other duties as are required by this Order or by this Court from time to time.

38.     **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

39.     **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

40.     **THIS COURT ORDERS** that the Monitor shall provide any creditor of the Applicants and the DIP Agent with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

41.     **THIS COURT ORDERS** that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

42.   **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, counsel to the Applicants and counsel to the Board of Directors of ESAI shall be paid their reasonable fees and disbursements, whether incurred before or after the date of this Order, in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings, all subject to assessment by order of the Court. The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor, counsel to the Applicants and counsel to the Board of Directors on a weekly basis and, in addition, the Applicants are hereby authorized to pay to the Monitor, counsel to the Monitor, counsel to the Applicants and counsel to the Board of Directors, retainers in amounts satisfactory to the Monitor or this Court, to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

43.   **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

44.   **THIS COURT ORDERS** that the Monitor, counsel to the Monitor, counsel to the Applicants, counsel to the Board of Directors of ESAI, the Financial Advisor (in respect of its monthly fees and expenses, but not in respect of the Success Fee or the Financing Fee, as those terms are defined in the Marwah Affidavit) shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $5 million, as security for the professional fees and disbursements of the Monitor, counsel to the Monitor, counsel to the Applicants, and counsel to the Board of Directors of ESAI (incurred at their standard rates and charges) and the monthly fees and expenses of the Financial Advisor (in accordance with the Evercore Engagement Letter), both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 60 and 62 hereof.

**DIP FINANCING**

45.    **THIS COURT ORDERS** that the Applicants are hereby authorized and empowered to obtain and borrow under the Senior Secured, Priming and Super-Priority Debtor-in-Possession Revolving Credit Agreement dated as of November 9, 2015 among the Applicants and Deutsche Bank AG New York Branch (the "**DIP Agent**") and the Lenders party thereto, as amended and restated by the Senior Secured, Priming and Super-Priority Debtor-in-Possession Amended and Restated Credit Agreement among the Applicants, the DIP Agent and the Lenders party thereto (the "**DIP Lenders**") dated as of November 9, 2015, and amended and restated as of November 13, 2015 (as may be further amended, restated, supplemented and / or modified, subject to approval of this Court in respect of any amendment that the Monitor determines is material, the "**DIP Agreement**") in order to finance the Applicants' working capital requirements and other general corporate purposes and capital expenditures, all in accordance with the Approved Budget, provided that borrowings under the DIP Agreement shall not exceed the principal amount of US$200 million unless permitted by further Order of this Court.

46.    **THIS COURT ORDERS** that such credit facility shall be on the terms and subject to the conditions set forth in the DIP Agreement and the Definitive Documents (defined below).

47.    **THIS COURT ORDERS** that the Applicants are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the DIP Agreement or as may be reasonably required by the DIP Agent and the DIP Lenders pursuant to the terms thereof, and the Applicants are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the DIP Agent and the DIP Lenders under and pursuant to the DIP Agreement and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order other than paragraphs 48 and 49.

48.     **THIS COURT ORDERS** that, notwithstanding anything contained in this Order, the DIP Agreement or the Definitive Documents, the DIP Agent and/or the DIP Lenders shall not be entitled to receive interest (as such term is defined in subsection 347(2) of the *Criminal Code*, R.S.C. 1985, c. C-46, as amended (the "**Criminal Code**")) contrary to subsection 347(1) of the Criminal Code.

49.     **THIS COURT ORDERS** that, notwithstanding anything contained in this Order, the DIP Agreement or the Definitive Documents, the DIP Agent and/or the DIP Lenders shall not be entitled to receive interest contrary to section 8 of the *Interest Act* (Canada), R.S.C. 1985, c. I-15 (the "**Interest Act**").

50.     **THIS COURT ORDERS** that the DIP Agent and the DIP Lenders shall be entitled to the benefit of and are hereby granted a charge (the "**DIP Lenders' Charge**") on the Property. The DIP Lenders' Charge shall secure all amounts owing by the Borrower to the DIP Agent and the DIP Lenders under the DIP Agreement and the Definitive Documents. The DIP Lenders' Charge shall have the priority set out in paragraphs 60 and 62 hereof.

51.     **THIS COURT ORDERS** that, notwithstanding any other provision of this Order:

    (a)     the DIP Agent and the DIP Lenders may take such steps from time to time as they may deem necessary or appropriate to file, register, record or perfect the DIP Lenders' Charge or any of the Definitive Documents;

    (b)     upon the occurrence of an event of default under the DIP Agreement, the Definitive Documents or the DIP Lenders' Charge, the DIP Agent and the DIP Lenders may cease making advances to the Applicants, set off and/or consolidate any amounts owing by the DIP Agent and the DIP Lenders to the Applicants against the obligations of the Applicants to the DIP Agent and the DIP Lenders under the DIP Agreement, the Definitive Documents or the DIP Lenders' Charge, make demand, accelerate payment, terminate any unutilized commitments under the DIP Agreement, the Definitive Documents or the DIP Lenders' Charge and give other notices, and upon four (4) days written notice

to the Applicants and the Monitor, and with leave of the Court, may exercise any and all of their other rights and remedies against the Applicants or the Property under or pursuant to the DIP Agreement, the Definitive Documents and the DIP Lenders' Charge, including without limitation, the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Applicants and for the appointment of a trustee in bankruptcy of the Applicants;

(c)     in connection with the exercise of any and all of their rights and remedies under paragraph 51(b), the DIP Agent and the DIP Lenders and any receiver, receiver and manager or interim receiver of the Applicants appointed by the Court on the application of the DIP Agent and the DIP Lenders shall be entitled to enter the cargo port facility located at the Port on notice to PortCo and repossess, disable or remove all or any portion of the DIP Collateral located at the Port; and

(d)     the foregoing rights and remedies of the DIP Agent and the DIP Lenders shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Applicants, the Property or PortCo and its property.

52.     **THIS COURT ORDERS** that the DIP Agent is authorized and directed to make any and all payments required to be made by the DIP Agent under the DIP Agreement, the Definitive Documents and this Order, in each case in accordance with the Approved Budget.

53.     **THIS COURT ORDERS AND DECLARES** that notwithstanding paragraph 3 but subject to paragraph 51, the DIP Agent and the DIP Lenders shall be treated as unaffected in any plan of arrangement or compromise filed by the Applicants under the CCAA, or any proposal filed by the Applicants under the *Bankruptcy and Insolvency Act*, R.S.C. 1985 c. B-2, as amended (the "**BIA**"), with respect to any advances made under the DIP Agreement and the Definitive Documents.

54.    **THIS COURT ORDERS** that prior to the hearing of the Comeback Motion (defined below), the Applicants, in consultation with the Monitor, shall prepare such protocols and procedures regarding intercompany transactions, claims and cash transfers (including, without limitation, such protocols regarding transactions with PortCo and EPC), which shall be reasonably acceptable to the DIP Agent and which protocols and procedures shall form part of the Cash Management System.

55.    **THIS COURT ORDERS** that all information that is provided by the Applicants to the DIP Agent and/or any of the DIP Lenders pursuant to the DIP Agreement (the "**DIP Agreement Information**") shall be provided to counsel to the Ad Hoc Committee of Essar Algoma Noteholders, counsel to the Ad Hoc Committee of Junior Noteholders, counsel to the USW and its applicable Locals, Representative Counsel to the Retirees, counsel to Wilmington Trust, National Association in its capacities as indenture trustee in respect of the Senior Secured Note Indenture, and the Junior Secured Note Indenture, and counsel to Essar Global Fund Limited (counsel receiving such information are "**Recipients**") concurrently with its provision to the DIP Agent and/or the DIP Lenders, as applicable, provided that:

(a)    each Recipient shall have entered into a confidentiality and non-disclosure agreement in form and substance satisfactory to the Applicants and the Monitor before being provided with the DIP Agreement Information;

(b)    the Applicants may, with the consent of the Monitor, withhold DIP Agreement Information from any or all of the Recipients, either on a temporary or permanent basis, if the Applicants determine, in consultation with the Monitor, that such DIP Agreement Information is inappropriate for disclosure; and

(c)    where DIP Agreement Information is withheld from any Recipient, the Monitor shall inform such Recipient of that fact.

56.    **THIS COURT ORDERS** that the Applicants are hereby authorized and directed to consult with the Recipients in relation to material matters in these proceedings, including without limitation the development and implementation of the SISP (as defined in the DIP Agreement) and any plan of compromise or arrangement in respect of the Applicants (each, a "**Critical Step**"), provided that:

(a)    each Recipient shall have entered into a confidentiality and non-disclosure agreement in form and substance satisfactory to the Applicants and the Monitor before being consulted concerning a Critical Step; and,

(b)    the Applicants may, with the consent of the Monitor, refrain from consulting with any or all of the Recipients in respect of any Critical Step that the Applicants have determined, in consultation with the Monitor, is commercially sensitive or otherwise inappropriate for consultation, either on a temporary or permanent basis and may proceed without consultation with any or all of the Recipients in respect of these Critical Steps.

57.    **THIS COURT ORDERS** that if the DIP Agent or the Requisite DIP Lenders (as that term is defined in the DIP Agreement) deliver to the Applicants written notice of default under the DIP Agreement (a "**Default Notice**"), the Applicants shall, within two business days, provide written notice of such Default Notice (including a copy thereof) to the Recipients.

58.    **THIS COURT ORDERS** that nothing in this Order or in the DIP Agreement or the Definitive Documents is intended to or shall impair, prejudice or modify any party's rights under the Intercreditor Agreement (as defined in the Marwah Affidavit) or the Pari Passu Intercreditor Agreement (as defined in the Marwah Affidavit).

59.    **THIS COURT ORDERS AND DECLARES** that this Order is subject to provisional execution and that if any of the provisions of this Order in connection with the DIP Agreement, the Definitive Documents or the DIP Lenders' Charge shall subsequently be stayed, modified, varied, amended, reversed or vacated in whole or in part (collectively, a "**Variation**") whether by subsequent order of this Court on or pending an appeal from this

Order, such Variation shall not in any way impair, limit or lessen the protections, rights or remedies of the DIP Agent and the DIP Lenders, whether under this Order (as made prior to the Variation), under the DIP Agreement or under any of the documentation delivered hereto or thereto (including the Definitive Documents, if any), with respect to any advances made prior to the DIP Agent and the DIP Lenders being given notice of the Variation and the DIP Agent and the DIP Lenders shall be entitled to rely on this Order as issued (including, without limitation, the DIP Lenders' Charge) for all advances so made.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

60.     **THIS COURT ORDERS** that the priorities of the Administration Charge, the Critical Supplier Charge, the DIP Lenders' Charge, the D&O Charge and the Financial Advisor's Charge, as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of $5 million);

> Second – Critical Suppliers' Charge (to the maximum amount of $15 million);

> Third – DIP Lenders' Charge;

> Fourth – D&O Charge (to the maximum amount of $30 million); and

> Fifth – Financial Advisor's Charge (to the maximum amount of Canadian dollars necessary to purchase US$8 million on the date on which the Financial Advisor's Charge is enforced).

61.     **THIS COURT ORDERS** that the filing, registration or perfection of the Administration Charge, the Critical Suppliers' Charge, the DIP Lenders' Charge, the D&O Charge and the Financial Advisor's Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

62.   **THIS COURT ORDERS** that each of the Charges shall constitute a charge on the Property and, subject to the charge over real property pursuant to section 11.8(8) of the CCAA (which, for greater certainty, shall not include any personal property of the Applicants or any property or equipment of the Applicants that is now or hereafter on or affixed to any real property of the Applicants, including any property of the Applicants that is or becomes a fixture), such Charges shall rank in priority to all other security interests, trusts (including constructive trusts), liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (including any deemed trust created under the Ontario *Pension Benefits Act*) (collectively, the "**Encumbrances**") other than (a) any Person with a properly perfected purchase money security interest under the *Personal Property Security Act* (Ontario) or such other applicable provincial legislation that has not been served with notice of this Order; and (b) statutory super-priority deemed trusts and liens for unpaid employee source deductions.

63.   **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges unless the Applicants also obtain the prior written consent of the Monitor, the DIP Agent and the DIP Lenders and the other beneficiaries of the Charges, or further Order of this Court.

64.   **THIS COURT ORDERS** that the Charges and the DIP Agreement and the Definitive Documents shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an

"**Agreement**") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(a) neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Agreement or the Definitive Documents shall create or be deemed to constitute a breach by the Applicants of any Agreement to which it is a party;

(b) none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Applicants entering into the DIP Agreement or the Definitive Documents, the creation of the Charges, or the execution, delivery or performance of the DIP Agreement and the Definitive Documents; and

(c) the payments made by the Applicants pursuant to this Order or the DIP Agreement, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

65.    **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicants' interest in such real property leases.

## CHAPTER 15 PROCEEDINGS

66.    **THIS COURT ORDERS** that ESAI is hereby authorized and empowered, but not required, to act as the foreign representative (the "**Foreign Representative**") in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside of Canada, including, if deemed advisable by the Applicants, to apply for recognition of these proceedings in the United States pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101- 1532, and to take such other steps as may be authorized by the Court.

**SERVICE AND NOTICE**

67.     **THIS COURT ORDERS** that the Monitor shall (a) without delay, publish in the national edition of *The Globe and Mail* and the *Sault Star*, a notice containing the information prescribed under the CCAA, (b) within five (5) days after the date of this Order, (i) make this Order publicly available in the manner prescribed under the CCAA, (ii) send, in the prescribed manner, a notice to every known creditor who has a claim against the Applicants of more than $1000 (excluding individual employees, former employees with pension and/or retirement savings plan entitlements, and retirees and other beneficiaries who have entitlements under any pension or retirement savings plans), and (iii) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder, provided that the Monitor shall not make the claims, names and addresses of individuals who are creditors publicly available.

68.     **THIS COURT ORDERS** that the Monitor shall create, maintain and update as necessary a list of all Persons appearing in person or by counsel in this proceeding (the "Service List"). The Monitor shall post the Service List, as may be updated from time to time, on the Website as part of the public materials to be recorded thereon in relation to this proceeding. Notwithstanding the foregoing, the Monitor shall have no liability in respect of the accuracy of or the timeliness of making any changes to the Service List.

69.     **THIS COURT ORDERS** the E-Service Protocol of the Commercial List (the "Protocol") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-serviceprotocol/) shall be valid and effective service. Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be

established in accordance with the Protocol with the following URL: www.ey.com/ca/essaralgoma (the "**Website**").

70.     **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol is not practicable, the Applicant and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or facsimile transmission to the Applicant's creditors or other interested parties at their respective addresses as last shown on the records of the Applicant and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

71.     **THIS COURT ORDERS** that the Applicants and the Monitor be at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the Applicants and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

72.     **THIS COURT ORDERS** that, except with respect to the Comeback Motion and subject to further Order of the Court in respect of urgent motions, all motions in this proceeding are to be brought on not less than seven (7) days' notice to all persons on the Service List and shall specify a date and time (the "**Initial Return Date**") for the hearing of the motion.

73.    **THIS COURT ORDERS** that any interested Person wishing to object to the relief sought in a motion (the "**Objecting Party**") must serve responding motion materials or a written notice stating the objection to the motion and the grounds for such objection (a "**Notice of Objection**") to the Service List no later than 5:00 p.m. EST on the date that is four (4) days prior to the Initial Return Date (the "**Objection Deadline**").

74.    **THIS COURT ORDERS** that, if no Notice of Objection is served by the Objection Deadline, the judge having carriage of the motion (the "**Presiding Judge**") may determine:

    (a)    whether a hearing is necessary;

    (b)    if a hearing is necessary, the date and time of the hearing;

    (c)    whether such hearing will be in person, by telephone or by written submissions only; and

    (d)    the parties from whom submissions are required.

(collectively, the "**Hearing Details**"). In the absence of any such determination, a hearing will be held in the ordinary course.

75.    **THIS COURT ORDERS** that, if no Notice of Objection is served by the Objection Deadline, the Monitor shall communicate with the Presiding Judge regarding whether a determination has been made by the Presiding Judge concerning the Hearing Details. The Monitor shall thereafter advise the Service List of the Hearing Details and the Monitor shall report upon its dissemination of the Hearing Details to the Court in a timely manner, which may be contained in the Monitor's next report in the proceeding.

76.    **THIS COURT ORDERS** that, if a Notice of Objection is served by the Objection Deadline, the moving party, following good faith consultations with each Objecting Party and the Monitor (together with the moving party, the "**Interested Parties**") regarding the date and timing of a scheduling appointment, shall seek a scheduling appointment before the Presiding Judge to be held prior to the Initial Return Date or on such other date as may be mutually agreed by the Interested Parties to establish a schedule for the motion,

including a schedule for the delivery of materials and the hearing of the contested motion, and to address such other matters, including interim relief, as the Court may see fit. Notwithstanding the foregoing, the Interested Parties may mutually agree to proceed with the contested motion on the Initial Return Date or on any other date as may be mutually agreed by the Interested Parties and to a schedule in relation thereto.

## COMEBACK MOTION

77.     **THIS COURT ORDERS** that the Applicants are otherwise authorized to serve their motion materials with respect to one or more motions at which the Applicants intend to seek, *inter alia*, priority of the Charges over all Encumbrances, orders permitting Algoma to suspend special payments required to be made to its defined benefit pension plans, an extension of the Stay Period and approval of a key employee retention plan (the "**Comeback Motions**") by forwarding a copy of this Order and any additional materials to be filed with respect to the Comeback Motion by electronic transmission, where available, or by courier to the parties likely to be affected by the relief to be sought at such parties' respective addresses as last shown on the records of the Applicants as soon as practicable.

78.     **THIS COURT ORDERS** that all matters relating to the fees and expenses of the Financial Advisor, save and except for the payment by the Applicants of all Financial Advisor's Monthly Fees earned before the date of the applicable Comeback Motion, including:  (a) the payment by the Applicants of the Financial Advisor's Monthly Fee earned after the date of the applicable Comeback Motion, the Success Fee and Financing Fee as authorized pursuant to paragraph 35 of this Order, (b) the inclusion of the Financial Advisor as a beneficiary of the Administration Charge and the Financial Advisor's Charge, and (c) the amount of the Financial Advisor's Charge shall be considered on the applicable Comeback Motion.

## SEALING

79.     **THIS COURT ORDERS** that Confidential Exhibits "H", "I", and "J" to the Marwah Affidavit are hereby sealed and shall not form part of the public record until further order of the Court.

**GENERAL**

80.    **THIS COURT ORDERS** that the Applicants and the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

81.    **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

82.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

83.    **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

84.    **THIS COURT ORDERS** that any interested party (including the Applicants and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

85.    **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Time on the date of this Order.

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE.

LA PRÉSENT ATTEST QUE CE DOCUMENT, DONT CHACUNE DES PAGES EST REVÊTUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE A TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVÉ DANS CE BUREAU

DATED AT TORONTO THIS ___ DAY OF NOV. 20 15
FAIT À TORONTO LE ___ JOUR DE

REGISTRAR    C. Irwin    GREFFIER
Registrar

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

NOV 2 0 2015

## SCHEDULE "A"

[DELETED]

## SCHEDULE "B"

| CRITICAL SUPPLIER | SUPPLY TERMS |
|---|---|
| Shell Energy North America (Canada) Inc. | In accordance with the master natural gas purchase and/or sale contract dated June 1, 2011 between Essar Steel Algoma Inc. and Shell Energy North America (Canada) Inc. (as amended) and the transaction confirmations issued thereunder dated March 16, 2015, June 24, 2015 and August 18, 2015 |
| Noble Americas Gas & Power Corp. | In accordance with the master agreement dated December 3, 2010 between Noble Americas Gas & Power Corp. and Essar Steel Algoma and the physical deal confirmations issued thereunder dated March 3, 2015, April 14, 2015 and August 24, 2015 |
| Praxair, Inc. | In accordance with the agreement dated March 1, 1996 (as amended and extended by an amending agreement dated October 28, 2009) and the agreement March 3, 1999, all among Praxair, Inc. and Essar Steel Algoma Inc. |
| Southern Coal Sales Corporation | In accordance with the coal supply agreement dated November 1, 2015 between Southern Coal Sales Corporation and Essar Steel Algoma Inc. |
| Canadian National Railway Company | In accordance with terms and conditions that are consistent with the supply relationship between Canadian National Railway Company and Essar Steel Algoma Inc. |

6483607 v4

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

Court File No: CV-15-000011169-00CL

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF ESSAR STEEL
ALGOMA INC., ESSAR TECH ALGOMA INC., ALGOMA HOLDINGS B.V., ESSAR STEEL
ALGOMA (ALBERTA) ULC, CANNELTON IRON ORE COMPANY AND ESSAR STEEL
ALGOMA INC. USA

---

### ONTARIO
### SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

---

### AMENDED AND RESTATED
### INITIAL ORDER

---

**STIKEMAN ELLIOTT LLP**
Barristers & Solicitors
5300 Commerce Court West
199 Bay Street
Toronto, Canada  M5L 1B9

**Ashley John Taylor** LSUC#: 39932E
Tel: (416) 869-5236
E-mail: ataylor@stikeman.com

**Yannick Katirai** LSUC#: 62234K
Tel:  (416) 869-5556
E-mail: ykatirai@stikeman.com

**Patrick J. Corney** LSUC#: 65462N
Tel: (416) 869-5668
E-mail: pcorney@stikeman.com
Fax: (416) 947-0866

Lawyers for the Applicants

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                                             :
In re:                                                       :        Chapter 15
                                                             :
ALGOMA HOLDINGS B.V.,                                        :        Case No. 15– _____ (       )
                                                             :
                    Debtor in a foreign proceeding.          :
                                                             :
                                                             :
------------------------------------------------------------ x
```

### CORPORATE OWNERSHIP STATEMENT PURSUANT TO
### FEDERAL RULES OF BANKRUPTCY PROCEDURE 1007 AND 7007.1

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure,

Algoma Holdings B.V. respectfully represents that the following are corporations, other than

governmental units, that directly or indirectly own 10% or more of any class of its equity:

1.    100% of Algoma Holdings B.V.'s common equity is directly owned by Algoma

   Holdings Coöperatief U.A.

2.    99.99% of Algoma Holdings Coöperatief U.A.'s common equity is directly

   owned by Essar Steel Ltd.

3.    100% of Essar Steel Ltd.'s common equity is directly owned by Essar Global

   Fund Limited.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
                                          :
```
*In re:*                                  :          **Chapter 15**
```
                                          :
```
**ALGOMA HOLDINGS B.V.,**                 :          **Case No. 15– _____ (     )**
```
                                          :
                                          :
```
       **Debtor in a foreign proceeding.**     :
```
                                          :
------------------------------------------------------------ x
```

**FOREIGN REPRESENTATIVE'S STATEMENT
<u>REGARDING KNOWN FOREIGN PROCEEDINGS</u>**

I, J. Robert Sandoval, pursuant to 28 U.S.C. §1746, hereby declare under penalty of

perjury under the laws of the United States as follows:

      1.     I am the General Counsel of Essar Steel Algoma Inc. ("**Algoma**

**Canada**"), the authorized foreign representative (the "**Foreign Representative**") of the above-

captioned debtor (collectively with Algoma Canada, Essar Steel Algoma Inc. USA, Essar Steel

Algoma (Alberta) ULC, Essar Tech Algoma Inc., and Cannelton Iron Ore Company, "**Algoma**")

who has filed an application in a foreign proceeding (the "**CCAA Proceeding**") under Canada's

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**")

pending before the Ontario Superior Court of Justice, Commercial List (the "**Canadian Court**").

      2.     I respectfully submit this statement, as required under section 1515(c) of

title 11 of the United States Code (the "**Bankruptcy Code**"), in support of the verified chapter

15 petition of Algoma Holdings B.V. filed by the Foreign Representative seeking recognition by

the Court of the CCAA Proceeding as a foreign main proceeding.

      3.     Pursuant to the requirements of section 1515(c) of the Bankruptcy Code,

to my knowledge, the CCAA Proceeding is the only insolvency proceeding of any kind pending

with respect to Algoma Holdings B.V. and, thus, is the only known "foreign proceeding" with respect to Algoma Holdings B.V., as that term is defined in section 101(23) of the Bankruptcy Code.  The following entities are subject to the CCAA Proceeding and the relevant court file number is CV‑15-000011169‑00CL:

    a)    Essar Steel Algoma Inc.

    b)    Essar Steel Algoma Inc. USA

    c)    Essar Steel Algoma (Alberta) ULC

    d)    Essar Tech Algoma Inc.

    e)    Algoma Holdings B.V.

    f)    Cannelton Iron Ore Company

4.    I declare under penalty of perjury under the laws of the United States of America that, based upon my knowledge, information and belief as set forth herein, the foregoing is true and correct.

Dated:  November 20, 2015        Respectfully submitted,

                */s/ J. Robert Sandoval*
                Essar Steel Algoma Inc.
                Foreign Representative of Algoma
                By:    J. Robert Sandoval
                Title:   General Counsel

## VERIFICATION OF CHAPTER 15 PETITION

Pursuant to 28 U.S.C. §1746, J. Robert Sandoval declares as follows:

I am the General Counsel of Essar Steel Algoma Inc., which was appointed by the Ontario Superior Court of Justice (Commercial List) as the foreign representative of Algoma Holdings B.V., Cannelton Iron Ore Company, Essar Steel Algoma Inc., Essar Steel Algoma Inc. USA, Essar Steel Algoma (Alberta) ULC and Essar Tech Algoma Inc. (collectively, "**Algoma**"). I have full authority to verify the foregoing chapter 15 petition for recognition of a foreign main proceeding, including each of the attachments and appendices thereto, and I am informed and believe that the allegations contained therein are true and accurate to the best of my knowledge, information and belief.  A true and accurate copy of the *Amended and Restated Initial Order* entered on November 20, 2015 by the Ontario Superior Court of Justice (Commercial List) is attached as **Schedule 2** to the foregoing chapter 15 petition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of November, 2015

/s/ J. Robert Sandoval
Essar Steel Algoma Inc.
Foreign Representative of Algoma
By:    J. Robert Sandoval
Title:   General Counsel